# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 22-435** |
| v. | : | **DATE FILED: September 5, 2023** |
| **TODD GOODMAN** <br> **ERIC PESTRACK** | : | **VIOLATION:** <br> **21 U.S.C. § 842(a)(1), (c)(2)(A)** |
| | : | **(knowingly dispensing a controlled substance without a valid prescription –** |
| | : | **1 count)** <br> **18 U.S.C. § 2 (aiding and abetting)** |

## SUPERSEDING INFORMATION

## COUNT ONE

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times material to this information:

1. The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States. Under the CSA, there were five schedules of controlled substances – Schedules I, II, III, IV, and V. Controlled substances were scheduled into these levels based upon their potential for abuse, among other things.

2. Part C of the CSA required that those who distributed or dispensed controlled substances, including pharmacies, must adhere to strict limitations regarding the conditions under which a controlled substance could be dispensed to the patient and ultimate user.

3. Section 829, under Part C of the CSA, prohibited the dispensing of a Schedule II controlled substance without a written prescription. Any person who knowingly dispensed a controlled substance without a valid prescription was subject to the penalties provided for violations of the provisions of law relating to controlled substances.

4. The CSA's implementing regulations provided direction specifically for pharmacists by providing that "[a] prescription for a controlled substance may only be filled by a pharmacist, acting in the usual course of his professional practice and either registered individually or employed in a registered pharmacy." 21 C.F.R. § 1306.06.

5. The CSA's implementing regulations explicitly warned pharmacists of the consequences of dispensing or distributing a controlled substance without satisfying these requirements. 21 C.F.R. § 1306.04(a) stated that the responsibility for the proper prescribing and dispensing of controlled substances was upon the prescribing practitioner, but a *corresponding responsibility* [for proper dispensing of controlled substances] rested with the pharmacist who filled the prescription.

6. With respect to "corresponding responsibility," pharmacists had a legal duty to ensure that prescriptions for controlled substances were legitimate before dispensing the controlled substance. The fact that a licensed physician actually or ostensibly prescribed a controlled substance did not obligate a pharmacist to fill that prescription. A reasonably prudent pharmacist must be familiar with suspicious activity or "red flags" indicating that the controlled substances prescribed were at risk for abuse or diversion. A pharmacist was likewise required to check the Pennsylvania Prescription Drug Monitoring Program ("PDMP") for suspicious prescriptions. The PDMP system was an electronic database that collected information on *all* filled controlled substance prescriptions. The pharmacist was required to check the PDMP to ensure that the patient was not obtaining controlled substances from more than one provider, was filling controlled substances at other pharmacies, and other "red flags" about the propriety of a controlled substance prescription.

7. When confronted with one or multiple red flags concerning a prescription for controlled substances, a pharmacist was required to intervene and resolve the red flags to determine whether the prescription was for a legitimate purpose before filling it.

8. While there was specific warning for pharmacists, the CSA dispensing regulations applied broadly to all persons involved in the manufacture, distribution, and dispensing of controlled substances, including lay persons.

The Offense Conduct

9. Oxycodone was a generic version of the opioid drug OxyContin. Opioids could cause physical and psychological dependence, even when taken as prescribed. At high doses, opioids would cause life threatening conditions or death, especially when used in combination with other controlled substances and/or alcohol. Oxycodone was a Schedule II controlled substance.

10. Spivack, Inc. d/b/a Verree Pharmacy (hereinafter "Verree") was a small, neighborhood pharmacy located at 7960 Verree Road, Philadelphia, Pennsylvania. Verree was open for business seven days per week. The United States Drug Enforcement Administration ("DEA") granted a registration to Verree which allowed it to purchase and dispense Schedule II through V controlled substances. Accordingly, the pharmacists and pharmacy technicians who dispensed controlled substances at Verree were subject to the requirements of Part C of the CSA.

11. By in or about 2018, Verree was the top retail pharmacy purchaser of oxycodone in Pennsylvania. Verree cultivated a reputation as an easy fill, no questions asked, pharmacy for those seeking large quantities of oxycodone.

12. Defendant TODD GOODMAN was employed as a part-time pharmacist at Verree for approximately 20 years. He was registered as a licensed pharmacist since in or about August 1986.

13. Defendant ERIC PESTRACK was employed as the lead pharmacy technician at Verree for more than 30 years. Defendant PESTRACK worked full time, usually Monday through Friday. He also covered weekend shifts when another pharmacy technician was unavailable.

14. In the course of their employment at Verree, defendants TODD GOODMAN and ERIC PESTRACK filled obviously altered written prescriptions for Person 1, known to the United States Attorney, for large quantities of oxycodone, without verifying the prescription with the issuing physician, checking the PDMP, or otherwise resolving red flags. The oxycodone prescriptions for Person 1, filled by defendants GOODMAN and PESTRACK, were forged by Person 1 and were not based on a valid, written prescription by a licensed practitioner issued for a legitimate medical purpose.

15. On or about May 26, 2018, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendants

**TODD GOODMAN and
ERIC PESTRACK,**

who are each subject to the requirements of Part C of the Controlled Substances Act, knowingly distributed and dispensed, and aided and abetted the distribution and dispensing of, a mixture and substance containing a detectable amount of a Schedule II controlled substance, that is, approximately 240 tablets of oxycodone 30 mg, to Person 1, based on an altered and forged written prescription that was not a valid written prescription by a licensed practitioner issued for a legitimate medical purpose, in violation of the requirements of Section 829 of the Controlled Substances Act.

In violation of Title 21, United States Code, Section 842(a)(1), (c)(2)(A), and Title 18, United States Code, Section 2.

_____
**JACQUELINE C. ROMERO
UNITED STATES ATTORNEY**

No. _ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

<u>Criminal Division</u>

THE UNITED STATES OF AMERICA

vs.

TODD GOODMAN,
ERIC PESTRACK

SUPERSEDING INFORMATION

21 U.S.C. § 842(a)(1), (c)(2)(A) (knowingly dispensing a controlled substance without a valid prescription – 1 count), 18 U.S.C. § 2 (aiding and abetting)

A true bill.

_____
Foreperson

Filed in open court this _____ day,
of _____ A.D. 20____

_____
Foreperson

Bail, $ _____